UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Norris Deshon Andrews,

                    Plaintiff,                          Case No. 20-cv-980 (DSD/LIB)

         v.                                              **ORDER &**
                                            **REPORT AND RECOMMENDATION**
Joel Brott, et al.,

                    Defendants.

         This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636, and upon the parties' various motions: 1) Defendants Sherburne County Jail, Joel Brott, Captain Zerwas, Captain Bloom, Commander Carr, and Brian Frank's Motion to Dismiss, [Docket No. 43]; 2) Defendants Allina Health Fridley Clinic, Jaucenita Neft, and Todd Hendrickson's Motion to Dismiss, [Docket No. 57]; 3) Plaintiff's Motion for Early Discovery, [Docket No. 49]; and 4) Defendants MEnD Correctional Care Inc., Deana McMasters, Andrea Kretch, Diana Van DerBeek, and Janelle Hussain's Motion to Compel Medical Authorizations. [Docket No. 76].

         For the reasons discussed herein, the Court recommends that Defendants Sherburne County Jail, Joel Brott, Captain Zerwas, Captain Bloom, Commander Carr, and Brian Frank's Motion to Dismiss, [Docket No. 43], be **GRANTED**, and Defendants Allina Health Fridley Clinic, Jaucenita Neft, and Todd Hendrickson's Motion to Dismiss, [Docket No. 57], be **GRANTED**.

         The Court further **DENIES** Plaintiff's Motion for Early Discovery, [Docket No. 49], and **DENIES** Defendants MEnD Correctional Care Inc., Deana McMasters, Andrea Kretch, Diana Van DerBeek, and Janelle Hussain's Motion to Compel Medical Authorizations. [Docket No. 76].

## I.    Relevant Procedural History and Factual Background

Plaintiff Norris Deshon Andrews (hereinafter "Plaintiff") initiated the present case on April 20, 2020, by filing his initial complaint naming as Defendants various individuals associated with the Sherburne County Jail and MEnD Correctional care: Joel Brott, Captain Zerwas, Captain Bloom, Commander Carr, Brian Frank, Diana Van DerBeek, Janelle Hussain, Deana McMasters, Andrea Kretch, and various unidentified "Sherburne County Corrections Officers," as well as, "MEnD Employees" and "MEnD, Inc." [Docket No. 1].

Plaintiff also commenced a second action in Case No. 20-cv-1674, by filing a second Complaint naming as Defendants various individuals associated with the Sherburne County Jail and MEnD Correctional Care, including Joel Brott, Janell Hussain, Brian Frank, Todd Kari Henrikson, Jaucenita H. Neft, and Christina Leonard, as well as, "MEnD Correctional Care Inc." (Compl., [Docket No. 1]).

On December 1, 2020, this Court ordered the consolidation of this case—Case No. 20-cv-980 (DSD/LIN)—and Case No. 20-cv-1674 (DSD/LIB) to proceed as Andrews v. Brott, et al., No. 20-cv-980 (DSD/LIB) (D. Minn.).  [Docket No. 18].  Plaintiff was then directed to file a consolidated amended complaint by April 1, 2021.  [Docket No. 24].

On April 5, 2021, Plaintiff filed the operative Amended Complaint[1] naming as Defendants the Sherburne County Jail, Joel Brott, Captain Zerwas, Captain Bloom, Commander Carr, Brian Frank, unidentified Sherburn County Correctional Officers 1-5 ("SCJ Defendants"), MEnD Correctional Care Inc., Diana Van DerBeek, Janelle Hussain, Deana McMasters, Andrea Kretch, unidentified MEnD Correctional Care Employees 1-5 ("MEnD Defendants"), the Allina Health

---

[1] For the purposes of the present motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the Complaint as true and construes them in the light most favorable to Plaintiff. See Stodghill v. Wellston Sch. Dist., 512 F.3d 472, 476 (8th Cir. 2008).

Fridley Clinic, Jaucentia Neft, and Todd Hendrikson ("Allina Defendants") (collectively, "Defendants"). Plaintiff filed the Amended Complaint pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendment while he was previously detained at the Sherburne County Jail in Elk River, Minnesota (hereinafter "SCJ"). (See generally Amended Compl., [Docket No. 25], at pp. 5-6). Plaintiff purports to sue Defendants in their individual capacities seeking compensatory and punitive damages. (Id. at p. 16).

Specifically, Plaintiff alleges that, on May 17, 2019, while detained at SCJ, he was injured when another SCJ inmate accidently ran into him. (Id. at p. 6). Plaintiff alleges that he was "taken to medical services and treated by MEnD employees" including MEnD Defendant Janelle Hussain, where it was determined that his leg was broken. (Id.). Notwithstanding the severity of the injury, Plaintiff was "sent . . . back to his living unit with 'over the counter ibuprofen or Tylenol for pain'"; with "no casting or splint"; "in a wheelchair with no arm or leg rest"; and was placed in a cell that was not handicapped-accessible. (Id.). Plaintiff alleges that "moving around in a cell . . . with [his] unsupported broken leg caused him . . . great pain and suffering." (Id.).

On the night of May 17, 2019, Plaintiff alleges that he was once more taken to medical services and "MEnD employees" confirmed with an x-ray that his leg was broken. (Amended Compl., [Docket No. 25], at p. 6). However, despite these results, Plaintiff was not provided with medical services or treatment, and was returned to his unit with only an extra blanket. (Id. at p. 6.)

During the overnight hours of May 17, 2019, Plaintiff alleges he "slipped and fell" on his broken leg causing him further pain. (Id. at p. 7). He asked for "pain medication from the correction[] officer on duty," but the request was denied. (Id.). During the next morning's

headcount, Plaintiff argued with an "Officer Dols" about Plaintiff's inability to stand.  (Id.). This altercation led to Plaintiff being placed "on lockdown."  (Amended Compl., [Docket No. 25], at p. 7).  During this lockdown, Plaintiff "covered his window with toilet paper" to get a prison official's attention.  (Id.).  Authorities subsequently transported Plaintiff to a hospital where the staff there reconfirmed that Plaintiff had broken his leg in two places.  (Id.).  The hospital staff prescribed Plaintiff "pain medication, a leg brace, and the use of crutches."  (Id.).  However, Plaintiff alleges that, upon his return to SCJ, MEnD Defendants Diana Van DerBeek and Janelle Hussain "immediately discontinued" his pain medications and his crutches were taken away. Plaintiff was instead provided with "over the counter Tylenol [and] ibuprofen."  (Amended Compl., [Docket No. 25], at p. 7). Plaintiff states that this caused him further pain.  (Id.).

Plaintiff learned that unidentified "Sherburn County Jail admin staff" would once again be placing him into a non-handicapped accessible cell.  (Id. at pp. 7-8).  Plaintiff alleges that, because the bathroom in that unit lacked handrails, "[t]here was no safe way for [him] . . . to get on or off the toilet or in [and] out the shower."  (Id. at p. 8).  After Plaintiff refused this cell assignment, Plaintiff was placed into a specialized "BHS cell," which was worse than the prior cell because it was not handicapped-accessible, but also had a mattress on the floor and "24 hours lights on with a camera in the corner."  (Id.).  Plaintiff states that he was left in this cell "for days in pain [and] suffering."  (Amended Compl., [Docket No. 25], at p. 8).

Several days later, and after filing "grievances [and] complaints" concerning his pain medication, crutches, and medical treatment, Plaintiff was moved to a handicapped-accessible cell. (Id.). However, Plaintiff alleges that "4 or 5 days later," SCJ Defendants "Sherburne County Jail," Brian Frank, and MEnD Defendants Diana Van DerBeek, and Janelle Hussain moved Plaintiff back to a non-handicapped accessible cell for filing "complaints [and] grievances."  (Id.).  He

alleges that he was in that cell for "over a month," during which time he filed further grievances with SCJ Defendants Joel Brott, Captain Zerwas, Captain Bloom, Brian Frank, and MEnD Defendants Diana Van DerBeek, Janelle Hussain, and "MEnD Correctional Inc." (Id.).

At some point thereafter, Plaintiff experienced "burning [and] swelling pain in [the] right calf of [his] injured leg." (Id. at p. 9). Plaintiff "repeatedly" reported this to unidentified "MEnD Inc. employees" and "Sherburne County Jail medical services," but was ignored. (Amended Compl., [Docket No. 25], at p. 9). Plaintiff also reported his pain to a physical therapist who was treating Plaintiff. (Id.). The physical therapist allegedly informed Plaintiff that she suspected a deep vein thrombosis and recommended that Plaintiff "be sent out for treatment immediately due to the danger of traveling blood clots." (Id.). Although MEnD Defendants Andrea Kretch and Janelle Hussain allegedly told the physical therapist that Plaintiff's problems would be "checked" within a day, no such check occurred for at least a week. (Id.).

On June 23, 2019, Plaintiff slipped in the shower, reinjuring his leg and injuring his back. (Id. at pp. 9-10). Plaintiff alleges that unidentified "Sherburne County Jail correctional officers," "medical services," and "MEnD employees" treated Plaintiff on the floor. (Amended Compl., [Docket No. 25], at p. 9). A "MEnD employee" directed Plaintiff to stand up and "walk off [the] pain," but Plaintiff expressed his inability to do so because of the pain. (Id.). The "MEnD employee" then directed unidentified "officers" to "put Plaintiff in his cell on the bed." (Id.). After this happened, Plaintiff alleges that he was placed into another specialized cell where he was left "for hours with no treatment, help[,] or medication." (Id.). He asserts that this cell was "filthy" with a sheetless mattress in the middle of the floor. (Id.). A few hours later, Plaintiff was then moved "in a humiliating fashion" to a MEnD medical clinic for an x-ray. (Amended Compl., [Docket No. 25], at p. 9). Plaintiff asserts that he was "forced to lay on the floor for the x-ray,"

and that when clinic staff asked that Plaintiff move his bodily position, an unidentified "officer yanked . . . Plaintiff by his hair ripping [two] of his dreadlocks from his sca[lp]." (Id.). Plaintiff contends that, because of this, he "refused to continue treatment that day." (Id.).

Plaintiff alleges that, as a result, SCJ Defendant Brian Frank and MEnD Defendants Van DerBeek and Hussain transported Plaintiff back to the specialized cell where he stayed in uncomfortable conditions for at least two days. (Id.). During those two days, Plaintiff's wheelchair was taken away "to prevent [him] from getting from the floor [and] bed"; he was "forced to urinate into [the] floor drain from a laying position"; and his requests for help went ignored. (Id. at p. 10). On June 26, 2019, Plaintiff experienced a "massive pulmonary embolism and cardiac arrest." Plaintiff attributes this to "the blood clots in his untreated calf traveling to his heart [and] lungs." (Amended Compl., [Docket No. 25], at p. 10). At some point, unidentified "MEnD Inc. employees" accused him of using illegal drugs and overdosing on "some kind of hazardous substance that poisoned medical service/MenD correctional care employees and Sherburne County Jail correctional staff." (Id. at p. 11). In Plaintiff's view, this led to "Defendants" treating him improperly with Narcan for a nonexistent "overdose"; furthermore, once he got to the hospital, he was "scrubbed with a brush and hosed off outside the hospital in a physically painful and humiliating way." (Id. at pp. 11-12). Plaintiff further contends that "Defendants" revealed this incident to "the press," leading to "press stories that damaged [Plaintiff's] reputation [and] publicly humiliated him." (Id. at p. 12). Plaintiff believes that this "false accusation" delayed his treatment, caused him to undergo "unnecessary tests," and "confused medical staff at the hospital." (Id.). Plaintiff ultimately underwent "emergency surgery" after blood clots were located in his heart and lungs, which he attributes to the blood clots traveling from his injured leg. (Amended Compl., [Docket No. 25], at p. 12).

Plaintiff returned to SCJ on June 29, 2019. (Id.). When he returned, he was placed in the same non-handicapped-accessible unit and was not allowed to shower for three days. (Id.). At some point, Plaintiff was taken to a housing unit with a handicapped-accessible shower, but even there, he was placed on "lockdown" restricting his movements "although that was contrary to medical advice." (Id. at p. 13). Plaintiff alleges that "many grievance/complaints were [written] to SCJ Defendants Brott, Zerwas, Franks, Bloom, and MEnD Defendants Van DerBeek and Hussain, regarding his treatment and cell conditions, but he received no response. (Id.).

Plaintiff contends that MEnD Defendants would at times give him the wrong medication, substitute his medications "without reason," or refuse to give him medication—all of which caused him more pain and, as a result, caused further blood clots. (Amended Compl., [Docket No. 25], at pp. 13-14). Plaintiff further contends that, with the assistance of Allina Defendants Neft and Henrickson, MEnD Defendant Hussain and "Leonard" engaged in "fr[au]d [and] malpractice" by "falsely report[ing] blood test/results" to change Plaintiff's medication. (Id. at p. 14). Specifically, Plaintiff alleges that "Leonard" and MEnD Defendant Hussain, along with Allina Defendants Neft and Henrickson, were doing "damage control" by altering certain medical-test results and otherwise falsifying Plaintiff's medical records. (Id.).

On December 30, 2019, Plaintiff experienced migraines and shortness of breath; he attributes this to his blood clots. (Id. at p. 8). The next day, he "passed out and hit his head." (Id.). Plaintiff alleges that he was refused treatment afterwards, so he "ingested pencils in front of correctional officers to force medical staff to have him transported to the hospital for treatment out of fear he would suffer a stroke, another cardiac arrest or pulmonary embolism." (Amended Compl., [Docket No. 25], at pp. 8–9). He further asserts that, because of his difficulties in receiving treatment, he now "suffers panic attacks and worsened PTSD." (Id. at 9).

Lastly, Plaintiff alleges that on January 14, 2020, MEnD Defendant Hussain allegedly falsified another medical record, by reporting that Plaintiff had "thrown a new bloodclot and tested positive for lupus anticoagulant." (Id. at p. 15). This allegedly led Plaintiff's doctor to change Plaintiff's medications. (Id.). Plaintiff states that since January 15, 2020, he has suffered weekly injections, repeated "medication changes," and "bad side effect[s]" from his medications. (Id.).

Plaintiff states that due to his various injuries, he has "suffered a number of persistent medical problems[,] including a lung condition that may be lifelong requiring ongoing treatment." (Amended Compl., [Docket No. 25], at p. 15). He complains of "shortness of breath," heart damage, "psychological symptoms, pain in the leg and chest," and "severe" migraines. (Id.). Plaintiff seeks $1 million in compensatory damages and $3 million in punitive damages. (Id.).

## II.    The SCJ Defendants' Motion to Dismiss. [Docket No. 43].

The SCJ Defendants' Motion to Dismiss, [Docket No. 43], seeks an Order of this Court dismissing Plaintiff's Amended Complaint as alleged against them. The SCJ Defendants argue that Plaintiff's Amended Complaint should be dismissed because Sherburne County Jail is not a legal entity subject to suit and because Plaintiff's purported claims of deliberate indifference and retaliation are insufficiently pled. (See Defs.' Mem., [Docket No. 46], at pp. 9-19).

### A.  Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, the non-moving party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). The complaint must

"state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–67).

"To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice to state a claim to relief that is plausible on its face." Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010) (citations and internal quotation marks omitted). In addition to accepting all of the factual allegations in the complaint as true, courts considering a Rule 12(b)(6) motion to dismiss draw all reasonable inferences in the plaintiff's favor, but courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Carton, 611 F.3d at 454 (citations omitted); see Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998); Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 664. When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See Iqbal, 556 U.S. at 678–81. Likewise, a Court need not accept as true wholly conclusory allegations couched as facts. Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999); see Bediako v. Stein Mart, Inc., 354 F.3d 835, 840 (8th Cir. 2004).

While the Court is required to construe the content within Plaintiff's pleadings liberally as he is proceeding pro se, plaintiff is nevertheless bound by applicable procedural and substantive

law.  See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).  Additionally, "[t]hough pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (internal citations omitted) see, e.g., Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law.").

**B.  Defendant Sherburne County Jail**

Plaintiff names the Sherburne County Jail as a defendant in this action. As noted above, the SCJ Defendants contend that the Sherburne County Jail is not a legal entity that is subject to suit.  The Court agrees.

A jail facility, including, in this instance, the Sherburne County Jail, is simply a building and is not a legal entity that can be sued as such.  Marsden v. Federal Bureau of Prisons, 856 F.Supp. 832, 83 (S.D.N.Y. 1994) (holding that "a jail is not an entity that is amenable to suit," and citing additional federal court decisions).  Since the Sherburne County Jail is not suable, the amended complaint fails to state an actionable claim for relief against the jail.  See De La Garza v. Kandiyohi, 2001 WL 987542 at *1 (unpublished opinion) (affirming summary dismissal of prisoner civil rights action against county jail and county sheriff's department "because, neither party was a suable entity"). See also Mahamud v. Hennepin County Workhouse of Plymouth,

Minn. Dist. Ct. Civ. No. 03–5120 (ADM/JGL) (D.Minn. 2003) (Montgomery, J.) (unpublished Memorandum Opinion and Order dated December 5, 2003).

Therefore, to the extent Plaintiff alleges claims against the Sherburne County Jail in this action, such claims should be **DISMISSED with prejudice**.

### C.  Plaintiff's § 1983 Claims

Plaintiff purports to raise claims against SCJ Defendants Joel Brott, Captain Zerwas, Captain Bloom, Commander Carr, and Brian Frank, pursuant to 42 U.S.C. § 1983.  To state a claim pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of Saint Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)).  A plaintiff must plead facts sufficient to demonstrate that each individual defendant was directly and personally involved in an alleged constitutional violation.  Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").

In addition to pleading individual involvement, a plaintiff must sufficiently plead a violation of a specific constitutional right.  Section 1983 does not itself grant jurisdiction.  Hagens v. Lavine, 415 U.S. 528, 534 (1974).

### 1.  Deliberate Indifference to Serious Medical Needs

Plaintiff's § 1983 claim alleges that "Defendants" were deliberately indifferent to his broken leg and deep vein thrombosis by delaying him treatment, denying him prescribed

medications, and housing him in unsafe and unsanitary conditions.  (See generally Amended Compl., [Docket No. 25]).  Plaintiff then specifically identifies SCJ Defendants Brott, Zerwas, Bloom, and Frank generically alleging that, during the period he was placed in a non-handicapped cell and then placed in "lockdown," he wrote or sent them grievances and complaints, but received no response.  (Id. at pp. 8, 13).

While deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed," Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." Jenkins v. County of Hennepin, Minn., 557 F.3d 628, 633 (8th Cir. 2009).  Here, Plaintiff simply alleges that these officers did not respond to his grievances and/or complaints, but beyond this, Plaintiff does not allege that these Defendants were personally involved in a delay in treatment, denial of prescription medication, or denial of his purported disability accommodations.  See Keeper v. King, 130 F.3d 1309, 1314 (8th Cir.1997) (finding no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment).

Furthermore, a claim of deprivation of a constitutional right cannot be based on a respondeat superior theory of liability.  See Monell v. Department of Social Services, 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." White v. Holmes, 21 F.3d 277, 280 (8th Cir.1994); see also Keeper, 130 F.3d at 1314 ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal

involvement in, or direct responsibility for, a deprivation of his constitutional rights." <u>Clemmons v. Armontrout</u>, 477 F.3d 962, 967 (8th Cir. 2007) (quoting <u>Mayorga v. Missouri</u>, 442 F.3d 1128, 1132 (8th Cir.2006)).

As already stated above, in order to state a claim upon which relief can be granted and withstand a Rule 12(b)(6) motion to dismiss, Plaintiff must make factual allegations in his Amended Complaint that are sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. With respect to SCJ Defendants Brott, Zerwas, Bloom, and Frank, Plaintiff has failed to do so.

Even liberally construing his Amended Complaint, taking all facts alleged therein as true, and drawing all reasonable inferences in his favor, Plaintiff's threadbare allegation of writing grievances to SCJ Defendants Brott, Zerwas, Bloom, and Frank are insufficient to support Plaintiff's § 1983 claims against them.

Regarding SCJ Defendant Carr, Plaintiff fails to allege <u>any</u> specific factual allegation against him in the Amended Complaint. Indeed, other than being referenced by incorporation generally when Plaintiff refers to all named Defendants collectively, SCJ Defendant Carr is only named in the caption of the Amended Complaint. (<u>See</u> <u>generally</u> <u>A</u>mended Compl., [Docket No. 25]). This is a complete failure of the showing needed in the Amended Complaint to allow Plaintiff's claim against SCJ Defendant Carr to proceed because it is entirely devoid of any factual allegation to show any personal involvement. <u>See</u> <u>Twombly</u>, 550 U.S. at 555. Plaintiff fails to state any fact of any kind as to how SCJ Defendant Carr was personally involved in or directly participated in the alleged constitutional violations he seeks to set forth in his Amended Complaint.

Therefore, the Court recommends that Plaintiff's deliberate indifference claims as alleged against SCJ Defendants Brott, Zerwas, Bloom, Frank, and Carr, in their individual capacity, be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

Having recommended dismissal of Plaintiff's generalized deliberate indifference claim as alleged against SCJ Defendants Brott, Zerwas, Bloom, Frank, and Carr, in their individual capacities, the Court will next address Plaintiff's retaliation claims as alleged against SCJ Defendant Frank.

### 2. Retaliation Claims

Plaintiff alleges two separate claims for retaliation against SCJ Defendant Frank, one relating to refusing an x-ray procedure, the other relating to filing grievances regarding his cell conditions. (Amended Compl., [Docket No. 25], at pp. 8-9).

#### i. Plaintiff's Generalized Retaliation Claim

"'It is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable. . . , even if the act when taken for a different reason, would have been proper.'" Craft v. Wipf, 836 F.2d 412, 419 (8th Cir. 1987) (quoting Buise v. Hudkins, 584 F.2d 223, 229 (7th Cir.1978), cert. denied, 440 U.S. 916 (1979)). To establish a claim of retaliation, Plaintiff must allege facts sufficient to show that: 1) he exercised a constitutional right; 2) Defendants took adverse action toward him; and 3) it was his exercise of the constitutional right that was the motive for the adverse action. Haynes v. Stephenson, 588 F.3d 1152, 1155 (8th Cir. 2009) (citing Meuir v. Greene Cty. Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007)).

For the purposes of this generalized retaliation claim against SCJ Defendant Frank relating to Plaintiff's refusal to continue an x-ray procedure, only the second prong is in question.

Plaintiff alleges that SCJ Defendant Frank, as well as, other MEnD Defendants, retaliated against Plaintiff for his refusal to continue an x-ray procedure and other medical treatment. Specifically, Plaintiff alleges that, on or about June 23, 2019, he was transferred to a "filthy" cell after slipping in the shower and reinjuring his leg and injuring his back.  (Amended Compl., [Docket No. 25], at pp. 9-10).  Plaintiff then asserts that he was escorted to the MEnD medical clinic for an x-ray where he was forced to lay on the floor and physically mistreated during the procedure.  (Id.).  As a result of his refusal to continue with the x-ray procedure or with other medical treatment that day, Plaintiff alleges that SCJ Defendant Frank, along with MEnD Defendants Van DerBeek and Hussain, retaliated by placing Plaintiff back in the same "filthy" specialized cell he had already been housed in.  (Id.).

It is well established that a prisoner cannot be transferred to a less desirable penal facility in retaliation for asserting a constitutional right. See Goff v. Burton, 7 F.3d 734, 737 (8th Cir.1993) ("a prisoner cannot be transferred in retaliation for the exercise of a constitutional right"), cert. denied, 512 U.S. 1209, 114 S.Ct. 2684 (1994).  However, here, Plaintiff was not transferred or moved.  The allegations in the Amended Complaint make clear that Plaintiff was returned to the same specialized cell he was being held in prior to the x-ray procedure.  As such, Plaintiff did not suffer an adverse condition as required to establish a retaliation claim.  See Meuir, 487 F.3d at 1119. Indeed, merely asserting that an action is "retaliatory" is insufficient to establish a retaliation claim.  Id.

Therefore, to the extent Plaintiff alleges a retaliation claim against SCJ Defendant Frank for Plaintiff's refusal to continue an x-ray procedure, Plaintiff's claim fails.  See e.g., Ferrell v. Kelley, No. 20-CV-35 (KGB)(JJV), 2021 WL 3504101, at *6 (E.D. Ark. Jan. 19, 2021), report and recommendation adopted, No. 20-CV-35 (KGB)(JJV), 2021 WL 3476587 (E.D. Ark. Aug. 6,

2021) (finding no evidence that Plaintiff was transferred for retaliatory reasons where Plaintiff was transferred from a more restrictive unit in the prison to a less restrictive unit).

*ii. First Amendment Retaliation Claim*

Plaintiff alleges that SCJ Defendant Frank, as well as, two other MEnD Defendants, retaliated against him for filing grievances and complaints concerning his pain medication, lack of crutches, and medical treatment.  (Amended Compl., [Docket No. 25], at p. 8).

To establish a First Amendment retaliation claim, a plaintiff must show "(1) he engaged in a protected activity; (2) a government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the protected activity." Evenstad v. Herberg, 994 F. Supp. 2d 995, 1000 (D. Minn. 2014) (citing Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir.2004)). The filing of prison grievances is protected First Amendment activity that is capable of supporting a viable retaliation claim. Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007).

Here, Plaintiff alleges that, sometime towards the end of May 2019, he was moved to a handicapped-accessible cell, but "4 or 5 days later," SCJ Defendant Frank, and MEnD Defendants Diana Van DerBeek, and Janelle Hussain moved Plaintiff back to a non-handicapped cell as retaliation for filing "complaints [and] grievances."  (Amended Compl., [Docket No. 25], at p. 8). As such, unlike Plaintiff's generalized retaliation claim above, Plaintiff does plausibly allege an adverse change in conditions.  However, this claim nevertheless fails for several reasons.

First, there is no allegation that SCJ Defendant Frank was personally involved in any decision to move Plaintiff to a non-handicapped-accessible cell.  To be clear, the purported adverse action against Plaintiff is the decision to move him to a non-handicapped-accessible cell—not the mere movement to another non-handicapped-accessible cell.  Thus, with nothing more, this claim

as pled against SCJ Defendant Frank should be dismissed.  See Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."); see also Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996) (explaining that speculative and conclusory allegations are insufficient to establish a retaliation claim).

Second, solely for the sake of argument, even assuming that SCJ Defendant Frank was directly and personally involved in the decision to move Plaintiff to a non-handicapped-accessible cell, there is nothing in the Amended Complaint to suggest that SCJ Defendant Frank's alleged desire to punish Defendant for filing grievances was the motivating factor behind his alleged decision to move Plaintiff.  See generally Scales v. Davis, 373 Fed. App'x 637 (8th Cir. 2010). Indeed, Plaintiff's allegation that he was moved to a non-handicapped-accessible cell in retaliation sometime after May 2019 is undermined by his own request to be removed from segregation.  For example, on June 19, 2019, Plaintiff placed a "sick call" reporting that he did not "need" to be "in seg no more with [his] chair assistance [sic] . . . [because he] can walk [and] start re-habbing [sic] [his] leg." [Docket No. 25-1, at p. 35].  Plaintiff was reportedly advised by medical personnel that, while he would like to be removed from "seg," he will remain there for "quite a while longer to prevent further injury"; and he must remain there "until [his] injury is more stable."  (Id.).  Further, Plaintiff's purported need to remain in a handicapped-accessible cell is also undermined by prison officers' observations.  Specifically, on June 24, 2019, while being on a "48 hour activity watch," Plaintiff was observed "mov[ing] himself from the floor to the wheelchair without difficulty"; and "lifting [him]self off of wheelchair to go in the shower without difficulty."  [Docket No. 25-1, at p. 46].

Therefore, assuming the grievances filed by Plaintiff were against SCJ Defendant Frank, his alleged desire to retaliate against Plaintiff for filing grievances could not possibly have been the motivating factor for moving Plaintiff to a non-handicapped-accessible cell. See Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir.2006) (stating that a prisoner "carries a substantial burden to prove that retaliation was the actual motivating factor"); see e.g., Lewis, 486 F.3d at 1029 (explaining that "[t]he lack of a temporal connection between the protected activity and the alleged retaliation dispels any inference of a causal connection").

In the present case, even liberally construing Plaintiff's pro se Amended Complaint, taking all the facts pled within as true, and drawing all reasonable inferences in Plaintiff's favor, nothing alleged in the Amended Complaint is sufficient to meet the § 1983 requirement that Plaintiff plead sufficient facts to plausibly show both SCJ Defendant Frank's personal involvement in the decision to move Plaintiff to non-handicapped-accessible unit or that Defendant's alleged desire to punish Plaintiff for alleged constitutionally protected activities was the motivating factor behind the decision to move Plaintiff.

Therefore, the Court recommends that Plaintiff's retaliation claims as alleged against SCJ Defendant Frank, in his individual capacity, be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

## III.    Allina Defendants' Motion to Dismiss. [Docket No. 57].

Allina Defendants' Motion to Dismiss, [Docket No. 57], seeks an Order of this Court dismissing Plaintiff's Amended Complaint as pled against them pursuant to Fed. R. Civ. P. 12(b)(6). The Allina Defendants argue that dismissal is mandated because Plaintiff failed to comply with the expert affidavit requirements of Minnesota Statute § 145.682. (Allina Defs.' Mem., [Docket No. 63], at pp. 5-12). The Court agrees.

Minn. Stat. § 145.682 applies to "action[s] alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which include[ ] a cause of action as to which expert testimony is necessary to establish a prima facie case." Minn. Stat. § 145.682, subd. 2.

In pertinent part, Minn. Stat. § 145.682 requires every plaintiff in a Minnesota medical malpractice case to furnish two affidavits in support of his or her claims. These two affidavits have been described as follows:

> The first affidavit (expert review affidavit) must be submitted with the complaint and state that before commencing the lawsuit, plaintiff's attorney reviewed the facts of the case with a medical expert who believed that at least one defendant named in the suit deviated from the applicable standard of care and thereby injured the plaintiff. . .

> The second affidavit (expert disclosure affidavit) must be served upon the defendant within 180 days after commencement of the suit and identify each expert plaintiff intends to call at trial, disclose the substance of the facts and opinions to which the expert will testify, and provide a summary of the grounds for each opinion.

Bellecourt v. United States, 784 F. Supp. 623, 636 (D. Minn. 1992) (citing Minn. Stat. § 145.682). If a medical malpractice complainant fails to meet either one of the two affidavit requirements set forth in § 145.682, the statute provides for "mandatory dismissal." Minn. Stat. § 145.682, subd. 6; Stroud v. Hennepin County Medical Center, 556 N.W.2d 552 (Minn. 1996).

It is undisputed in the present case that Allina Defendants demanded for Plaintiff to provide an expert review affidavit (the first required affidavit) under Minn. Stat. § 145.682, Subd. 6(a), and that Plaintiff never served it. (Allina Defs.' Mem., [Docket No. 63], p. 7; Mem. in Opp., [Docket No. 82], at p. 2). However, Plaintiff argues that this case fits the following exception to the requirements of Minn. Stat. § 145.682:

If expert testimony is not needed [to establish a prima facie case of malpractice], § 145.682 does not apply. "Expert testimony is generally required in medical-malpractice cases because they involve complex scientific or technological issues." "An exception to this rule applies when the alleged negligent acts are within the general knowledge or experience of laypersons." "[O]nly rarely" does this exception apply. Batista v. United States, No. 16-cv-794 (PJS/DTS), 2017 WL 3190648, *9 (D. Minn. June 9, 2017) (citations omitted).

Plaintiff contends that the present case is one which does not require expert testimony because it

> is not necessary where the facts to be determined are within the common knowledge of the jury and where the results of surgical or medical treatment, viewed in the light of all the circumstances, provide[d] a sufficient evidentiary bas[i]s to support an inference of negligent.

(Mem. in Opp., [Docket No. 82], at p. 3). However, this argument is unpersuasive. The cases in which parties were not required to comply with Minn. Stat. § 145.682 included egregious and obvious malpractice. "For example, an affidavit is not required in a clear res ipsa loquitur situation (i.e. the wrong limb amputation, surgical tools left in surgery site." Tineo v. Fed. Bureau of Prisons, No. 5-cv-724 (ADM/SRN), 2005 WL 1745451, *2 n.2 (D. Minn. July 22, 2005); see also Vogel v. Turner, No. 11-cv-446 (PJS/JJG), 2013 WL 358874, *6 (D. Minn. Jan. 8, 2013) ("Exceptional cases include situations in which sponges or metal clips are forgotten inside a surgical patient following surgery."). In other words, "expert testimony is necessary to support all but the most obvious medical malpractice claims." Haile, 598 N.W.2d at 428.

The Court finds that medical malpractice and medical negligence claims such as the ones in this case, however, which are based on a delay in treatment, improper treatment, the circulation of purportedly false test results or the like, generally do not fit within the "rarely used" exception to Minn. Stat. § 145.682's affidavit requirement. See, e.g., Batista, 2017 WL 3190648, at *9

("expert testimony is necessary to establish [a] prima facie case" based on claims of "delay in treatment, improper evaluation and treatment, and the medical staff's failure to do an MRI"); Phillips v. Fairview Health Servs., No. 10-cv-4442 (MJD/SER), 2011 WL 6151514, *4 (D. Minn. Dec. 12, 2011) ("[A]n expert opinion is required to determine whether the [defendants'] care and treatment of Plaintiff . . . was medically appropriate under the circumstances.").

The case presently before this Court is not one in which the alleged medical malpractice or negligence is so obvious and within the general knowledge of a layperson that expert testimony is unnecessary to establish a prima facie case. Therefore, Plaintiff was subject to the mandated affidavit requirements established in Minn. Stat. § 145.682. He does not dispute that he failed to comply with those requirements, and such failure mandates dismissal of Plaintiff's medical malpractice and negligence claims with prejudice as pled against Allina Defendants. See Flores v. U.S., 689 F.3d 894, 900 (8th Cir. 2012) ("[T]he consequence of noncompliance [with Minn. Stat. § 145.682, subd. 2] is dismissal of the claim with prejudice."); Chizmadia v. Smiley's Point Clinic, 873 F.2d 1163, 1164 (8th Cir. 1989) ("Failure to comply with section 145.682 results in mandatory dismissal with prejudice.").

Therefore, the Court recommends that Plaintiff's claims against Alina Defendants be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted.

**IV.    Plaintiff's Motion for Early Discovery.  [Docket No. 49].**

### A.  Plaintiff's Motion for Copies

Plaintiff first asks the Court to send Plaintiff a copy of certain docket entries in the two actions consolidated into the present matter (Docket Nos. 1-10 in Case No. 20-cv-980 and Docket Nos. 1-6 in Case No. 20-cv-1674). (Mot. for Early Discovery, [Docket No. 49], at p. 2). Plaintiff asserts that these materials are necessary in order to prepare an expert affidavit in compliance with

Minnesota Statute § 145.682 (as demanded by Allina Defendants).  Plaintiff further asserts that his copies of these materials were lost during his transfer to a new incarceration facility .  (Id. at p. 1).

While the Court has granted Plaintiff's IFP Application, "an order granting leave to proceed IFP does not automatically give a litigant the right to obtain a free copy of any document in the record that the litigant may want." Duwenhoegger v. Miles, No. 17-cv-1432 (PJS/TNL), 2017 WL 2799155, at *1 (D. Minn. June 28, 2017) (citing cases).  Indeed, this is not the first time Plaintiff has requested copies of these documents.  Specifically, on January 11, 2021, Plaintiff sought a copy of "all filings and proceedings" in both consolidated actions due to the same transfer. [Docket No. 23, at p. 1].  The Court granted Plaintiff's request, in part, with respect to only those documents that he did not file.  [Docket No. 24, at p. 3].  Here, again, most of the entries in this action's docket 1 through 10 are materials Plaintiff himself filed, and "[a]n IFP litigant is not entitled to free copies of documents that he submitted to the Court." Duwenhoegger, 2017 WL 2799155, at *1. Furthermore, to the extent Plaintiff seeks these copies in order to comply with the mandated affidavit requirements established in Minn. Stat. § 145.682, this has now been rendered moot based on the Court's recommendation that Allina Defendants' Motion to Dismiss be granted, supra.

As a result, the Court **DENIES** Plaintiff's Motion for Early Discovery, [Docket No. 49], to the extent he is seeking copies of Docket Nos. 1-10 in Case No. 20-cv-980 and Docket Nos. 1-6 in Case No. 20-cv-1674.  If Plaintiff wishes to obtain copies of materials that he filed, he must contact the Clerk of Court and pay the requisite fees.

**B. Plaintiff's Motion for Early Discovery**

Plaintiff also seeks an Order from this Court to begin the "'early discovery' process in or on the material evident that'll be vital to proven the Plaintiff's claims on their merits." (Mot. for Early Discovery, [Docket No. 49], at p. 3).

Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order." Fed. R. Civ. P. 26(d)(1). In certain cases, Courts have allowed discovery before a Rule 26(f) conference; this early discovery is referred to as expedited discovery. See, e.g., Antioch v. Scrapbook Borders, Inc., 210 F.R.D. 645 (D. Minn. 2002). Courts within this District have utilized a "good cause" standard when considering a party's request for expedited discovery. See, e.g., Strike 3 Holdings, LLC v. Doe, No. 18-cv-771 (DWF/HB), 2018 WL 2278110, at *1 (D. Minn. May 18, 2018). "Courts applying this good cause standard balance the need for discovery in the administration of justice against the prejudice to the responding party." Waters, Cafesjian Family Found., Inc. v. Waters, No. 12-cv-648 (RHK/LIB), 2012 WL 12925068, at *1 (D. Minn. June 27, 2012). In balancing the need for discovery against the prejudice to the responding party, Courts examine the entirety of the record and the reasonableness of the request in light of the circumstances of the particular case. See, Id.

The Court finds that Plaintiff has not satisfied the good cause standard in the present case. As noted above, to the extent Plaintiff asserts that "early discovery" is needed in order to comply with the mandated affidavit requirements established in Minn. Stat. § 145.682, this has now been rendered moot by the Court's recommendation, supra, that Allina Defendants' Motion to Dismiss be granted. Therefore, the Court **DENIES** Plaintiff's Motion for Early Discovery, [Docket No. 49].

**V.    MEnD Defendants' Motion to Compel Medical Authorizations.  [Docket No. 76].**

MEnD Defendant's Motion to Compel seeks an Order of this Court compelling Plaintiff to provide an executed medical authorization for Sherburne County Jail.  Plaintiff has not objected to the present motion.

Federal Rule of Civil Procedure 26(b)(1) states:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Further, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1).  However, as already provided above, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order." Fed. R. Civ. P. 26(d)(1).

Here, MEnD Defendants served Plaintiff with a Request for Production of Documents on July 21, 2021.  (Novak Decl., [Docket No. 79-1]).  In pertinent part, Requests Nos. 1 and 2 to Plaintiff read as follows:

1. Copies of all medical reports previously or hereafter made by any treating and/or examining medical provider; and
2. Written authority by Plaintiff to permit the inspection of all hospital and other medical reports, concerning the physical, mental, or blood condition of Plaintiff, including the conclusions of treating and/or examining medical providers. Please see authorization attached to these requests.

(Id.).    A review of the docket sheet reveals that, although MEnD Defendants answered the Amended Complaint, the Court has not yet entered a scheduling order for Plaintiff and MEnD Defendants.  Because no scheduling order has been entered, discovery cannot commence, and

serving Plaintiff with Requests for Production of Documents on July 21, 2021, was premature. See Fed.R.Civ.P. 26(d)(1). It follows that MEnD Defendants' request is premature.

Therefore, to the extent MEnD Defendants' Motion seeks an Order of this Court compelling Plaintiff to Respond to Request for Production Nos. 1 and 2, MEnD Defendants' Motion to Compel, [Docket No. 76], is **DENIED without prejudice** as premature.

## VI. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants Sherburne County Jail, Joel Brott, Captain Zerwas, Captain Bloom, Commander Carr, and Brian Frank's Motion to Dismiss, [Docket No. 43], be **GRANTED**, as set forth herein;

2. Defendants Allina Health Fridley Clinic, Jaucenita Neft, and Todd Hendrickson's Motion to Dismiss, [Docket No. 57], be **GRANTED**, as set forth herein; and

3. Plaintiff's Amended Complaint be **DISMISSED,** without prejudice, as pled against Sherburne County Jail, Joel Brott, Captain Zerwas, Captain Bloom, Commander Carr, Brian Frank, Allina Health Fridley Clinic, Jaucenita Neft, and Todd Hendrickson,.

For the foregoing reasons, and based on all of the files, records, and proceedings herein,

**IT IS FURTHER HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Early Discovery, [Docket No. 49], is **DENIED**, as set forth herein; and

2. Defendants MEnD Correctional Care Inc., Deana McMasters, Andrea Kretch, Diana Van DerBeek, and Janelle Hussain's Motion to Compel Medical Authorizations, [Docket No. 76], is **DENIED without prejudice**, as set forth herein.

Dated: March 23, 2022                    s/Leo I. Brisbois
                                         Hon. Leo I. Brisbois
                                         United States Magistrate Judge

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).